UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                )
                                )
NANCY NETTO,                     )
          Petitioner,            )
                                )
v.                               )    Civil Action No. 05-10695-RGS
                                )
LYNN BISSONNETTE                 )
          Respondent.            )
                                )
_____)

PETITIONER'S OBJECTIONS TO THE
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Now comes the Petitioner by and through her
undersigned counsel in the above-entitled matter and
respectfully objects to Magistrate Judge Joyce London
Alexander's Report and Recommendation dated May 31, 2006
(Document #20)(hereinafter referred to as the "MRR").[1]  The
Magistrate Judge recommended that the petition for a writ

_____

[1] This Court will review the MRR *de novo* and without
deference.  United States v. Raddatz, 447 U.S. 667, 674
(1980); Gioiosa v. United States, 684 F.2d 176, 178 (1st
Cir. 1982); 28 U.S.C. § 636(b)(1)(C).  Rule 3(c) of the
Rules for United States Magistrate Judges in the United
States District Court for the District of Massachusetts
states, "The district judge to whom the case is assigned
must make a de novo determination . . . of any portion of
the magistrate judge's recommended disposition to which
specific written objection has been made . . . .".  See Rule
8(b) of the Rules Governing Section 2254 Cases ("The judge
must determine *de novo* any proposed finding or
recommendation to which objection is made.").

of habeas corpus in this case be denied.  MRR at 23.  For the reasons expressed herein and for all the reasons more fully set forth in the papers[2] previously filed by the Petitioner in this case, the Petitioner urges this Court to reject the Magistrate Judge's findings, reasoning, and recommendation denying relief and to instead grant her a writ of habeas corpus.[3]

OBJECTION NUMBER ONE

The Petitioner objects to the Magistrate Judge's findings that the Massachusetts Supreme Judicial Court's decision with respect to the sufficiency of the evidence against the Petitioner (regarding her physical presence in the victim's apartment on the night of the murder as well as her knowledge that her coventurer was armed with a dangerous weapon) was not an objectively unreasonable application of the United States Supreme Court's holding in

---

[2] In particular, the Petitioner directs the Court's attention to her opening brief (Document #7), to her reply brief (Document #12), and to her memorandum in support of her motion for leave to conduct discovery (Document #17).

[3] The transcript of the Petitioner's trial will be cited by volume and page number as "Tr. Volume/Page". Exhibits included with the Petitioner's opening brief (Document #7) will be cited by identifying letter and, where appropriate, by page number as "Petitioner's Opening Brief Exhibit Letter at Page".  The exhibit included with the Petitioner's reply brief (Document #12) will be cited by identifying letter as "Reply Brief Exhibit Letter".

Jackson v. Virginia, 443 U.S. 307, 319 (1979).  MRR at 13-
15.  The Petitioner contends that the Supreme Judicial
Court's ruling with respect to the sufficiency of the
evidence against the Petitioner was objectively
unreasonable under the standard articulated in McCambridge
v. Hall, 303 F.3d 24, 36 (1st Cir. 2002)(en banc).

## Argument

On her direct appeal to the Supreme Judicial Court,
the Petitioner argued "that there was insufficient evidence
of her presence, knowledge of a weapon, or participation in
the crime to warrant a conviction of felony murder as a
joint venturer predicated on armed robbery."  Commonwealth
v. Netto, 438 Mass. 686, 701 (2003).  The Petitioner now
contends, as she must for the purposes of her federal
habeas corpus petition, that the evidence the Commonwealth
presented at her trial was insufficient to support her
conviction for first-degree murder under the standard
established by the Supreme Court in Jackson v. Virginia,
443 U.S. 307, 318-319 (1979), and that the Supreme Judicial
Court's decision was objectively unreasonable in its
assessment that the weight of the evidence was sufficient
warrant the conviction.[4]

---

[4] Because the Supreme Judicial Court adjudicated this
constitutional claim on its merits, this Court will apply

An indicator that a state court decision may be
unreasonable is that the decision is "arbitrary".
McCambridge v. Hall, 303 F.3d 24, 37 (1st Cir. 2002)(en
banc), citing O'Brien v. Dubois, 145 F.3d 16, 25 (1st Cir.
1998).  This indicator of objective unreasonableness is
unusually glaring in the Supreme Judicial Court's
determination of the sufficiency of the evidence issue in
the Petitioner's case.

---

the deferential, statutory "unreasonable application" test
of the Antiterrorism and Effective Death Penalty Act of
1996 (AEDPA), 28 U.S.C. § 2254(d)(1).  The Supreme Court
made clear that the federal district court may grant habeas
relief "if the state court identifies the correct governing
legal principle from [the Supreme] Court's decisions but
unreasonably applies that principle to the facts of the
prisoner's case." Williams v. Taylor, 529 U.S. 362, 413
(2000).  Under the standard established by the United
States Court of Appeals for the First Circuit for
construing what constitutes an "unreasonable application"
of United States Supreme Court precedent, in order to show
that the Massachusetts Supreme Judicial Court's decision in
Petitioner's case is an objectively unreasonable
application of Jackson v. Virginia, the Petitioner must
prove that there is "some increment of incorrectness beyond
error" in the state court's decision.  McCambridge v. Hall,
303 F.3d 24, 36 (1st Cir. 2002)(en banc), quoting Francis
S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000).  As the
First Circuit has noted, "The increment need not
necessarily be great, but it must be great enough to make
the decision unreasonable in the independent and objective
judgment of the federal court."  Id.

*Sufficiency of The Evidence of the Petitioner's*
<u>*Presence at the Scene of the Crime at the Time of the Crime*</u>

With respect to the sufficiency of the evidence of the Petitioner's presence at the scene of the crime at the time of the crime, the Supreme Judicial Court ruled:

> [T]he Commonwealth introduced evidence that her fingerprint was on the bathroom door handle in Levesque's apartment, that it was a "fairly fresh" print, and that Nancy Netto had not been allowed into the apartment for one week prior to the crime.  In combination, that evidence viewed in the light most favorable to the Commonwealth, was sufficient to prove that Nancy Netto had been in Levesque's apartment at the time of the crime.

<u>Commonwealth v. Netto</u>, 438 Mass. 686, 701-702 (2003).

Completely aside from whether the Commonwealth's use of its purported "fresh fingerprint" testimony had any kind of legitimate forensic underpinnings, whether it created the evidentiary foundation for a wrongful conviction, and whether it effectively denied the Petitioner her federally protected rights to a fair trial and to the due process of law (<u>see</u> Argument III in Petitioner's opening brief), the inference that because the Petitioner's fingerprint was found on the bathroom door handle in the victim's apartment, the Petitioner must have been there at the time of the crime, as otherwise her fingerprint would have been smudged off by someone else using the bathroom door handle, is simply improper.

The inference drawn by the state court that the
Petitioner must have been at the scene of the crime at the
precise time of the crime is not only improper, but more
than being merely improper, for AEDPA purposes it is
entirely arbitrary.[5]  It is equally likely, based on this
same evidence, that the Petitioner was not at the scene of
the crime at the precise time of the crime.

Michelle Griffin testified that the last time she saw
the Petitioner in Levesque's (the victim's) apartment was
about a week before the murder.  Tr. II/18-19, 24.  The
Petitioner had told her that she was not welcome in
Levesque's apartment after that last visit.  Tr. II/24.
But, before that time, the Petitioner had been seen over
Levesque's apartment on numerous occasions.  Tr. II/19, 79.

---

[5] The inferences which the Supreme Judicial Court drew
from its factual findings in the Petitioner's case are not
entitled to any special rule of deference based on 28
U.S.C. § 2254(d)(2) and 28 U.S.C. § 2254(e)(1).  In a
habeas case challenging the state court's determination of
the sufficiency of the evidence under the Jackson standard,
these inferences are more appropriately analyzed under the
unreasonable application test of 28 U.S.C. § 2254(d)(1).
See Ouber v. Guarino, 293 F.3d 19, 27 (1st Cir. 2002),
quoting Sanna v. Dipaolo, 265 F.3d 1, 7 (1st Cir. 2001)
("[T]he special prophylaxis of section 2254(d)(2) applies
only to determination of 'basic, primary, or historical
facts.'").  As the First Circuit noted in the Ouber case,
"Inferences, characterizations of the facts, and mixed
fact/law conclusions are more appropriately analyzed under
the "unreasonable application" prong of section
2254(d)(1)."  Id.

Massachusetts State Police Trooper Richard Lauria, the
Commonwealth's fingerprint expert, could not definitively
state how long the Petitioner's fingerprint had been
actually present on the door handle in Levesque's
apartment.  Tr. II/18-19, 79-80, Tr. III/82, 85-88.[6]  And no
other witness placed the Petitioner in Levesque's apartment
(or even in the apartment building itself) at the supposed
time of Levesque's murder.[7]

The Supreme Judicial Court improperly drew the
inculpatory inference against the Petitioner when an
opposite and exculpatory inference was equally likely.  The

---

[6] The Commonwealth's fingerprint expert did not exclude
the placement of the print at the time when Michelle
Griffin testified that she had last seen the Petitioner in
Levesque's apartment (about a week before the murder).  Tr.
II/18-19, Tr. III/82, 85-88.

[7] There was also evidence in the record that Levesque
lived alone.  Tr. I/136.  Other than Levesque, there was no
evidence in the record that anyone else was actually in
Levesque's apartment during the week preceding the murder.
And, as a single gentleman living alone in the apartment,
it is equally likely, if not significantly more likely
based upon everyday commonsense, that Levesque never closed
the door to his bathroom when he used the bathroom when
alone in his apartment, thereby leaving the Petitioner's
fingerprint to remain in pristine condition.  Based upon
this evidence, the contrary inference is equally likely –
that despite the discovery of the Petitioner's fingerprint
on the handle to the bathroom door, she was not in the
apartment at the time of the crime.  It is equally likely
that the Petitioner's fingerprint was placed on the door
handle on some other previous occasion when she was
legitimately in Levesque's apartment prior to the murder.

state court's determination that there was sufficient evidence of the Petitioner's physical presence at the time of the crime based upon this inference was patently arbitrary.  The same evidence equally supports both inculpatory and exculpatory inferences; the state court simply went with the inculpatory inference.  Under the federal constitutional standard, no rational jury could properly find beyond a reasonable doubt that the Petitioner was present in the apartment at the time of the murder based upon this circumstantial evidence, evidence which the Petitioner contends is inherently forensically flawed to begin with.  And the Supreme Judicial Court's determination that the jury acted rationally was objectively unreasonable under the totality of the evidence, especially when the record of the Petitioner's trial completely lacks any evidence of some sort of an act by the Petitioner which contributed to the crime happening.

Finally, the Supreme Judicial Court's ruling that there was sufficient evidence to establish the Petitioner's participation in the crime is objectively unreasonable because there was no evidence that the Petitioner acted as an accessory before the crime, aided in the commission of the crime, or even had knowledge that her coventurer intended to commit the crime of armed robbery.

In its decision, the Supreme Judicial Court referred to evidence other than the fingerprint linking the Petitioner to the crime.  Commonwealth v. Netto, 438 Mass. at 702 n.17.  The Magistrate Judge erroneously relied on that same reasoning.  MRR at 14.  That evidence only shows that the Petitioner utilized the proceeds of the crime or attempted to conceal the crime after the crime occurred. That evidence does not permit the jury to find beyond a reasonable doubt that she participated in an armed robbery with her coventurer which resulted in the killing of the victim.  Again, the record of the Petitioner's trial is simply devoid of any evidence of some sort of act by the Petitioner which contributed to the crime happening.

### *Sufficiency of the Evidence* *Regarding Petitioner's Knowledge of a Weapon*

With respect to the Petitioner's knowledge of a weapon or other evidence of her participation in the crime, the Massachusetts Supreme Judicial Court's reasoning is similarly strained to the level of "some increment of incorrectness beyond error" under the McCambridge standard.

As for evidence that the Petitioner had knowledge that her coventurer[8] was armed with a dangerous weapon, the

---

[8] The Supreme Judicial Court acknowledged that the Commonwealth presented strong but circumstantial evidence

murder weapon was a knife that matched a set of steak knives that was found in a kitchen drawer inside Levesque's apartment.  Tr. IV/101.  There was no evidence offered to suggest that the Petitioner knew that the plan for the robbery included the use of a weapon or that the Petitioner was even aware of that planned weapon.  The state court merely inferred that because resistance was to be expected from Levesque, the perpetrators would have recognized that a dangerous weapon was necessary to overcome Levesque's resistance and therefore the Petitioner must have been aware of that planned weapon.  The Magistrate Judge erroneously found that this inference by the Supreme Judicial Court was not objectively unreasonable.  MRR at 15.

Essentially, what the state court is saying is that the perpetrators planned an armed robbery in the victim's residence, but that they planned to arm themselves with a weapon to be obtained at that residence once they arrived at that residence.  Commonsense would suggest that few, if any, armed robberies are ever planned in such an unusual fashion.  The Petitioner contends this inference is not only unreasonable – and that no rational trier of fact

---

that the Petitioner's coventurer was the principal perpetrator.  Commonwealth v. Netto, 438 Mass. at 701, 704.

could have ever properly found beyond a reasonable doubt this essential element of the crime of armed robbery under a theory of joint venture based on this thinking – but that the state court's determination relying upon this unusual logic is so flawed that the McCambridge standard is met.

     In summary, viewing the totality of the evidence in evaluating the determination of the Supreme Judicial Court, that Court's assessment that the weight of the evidence was constitutionally sufficient under Jackson to support Petitioner's conviction is objectively unreasonable under the First Circuit's McCambridge standard.  The Petitioner is entitled to habeas relief under Ground One of her Petition.

## OBJECTION NUMBER TWO

     The Petitioner objects to the Magistrate Judge's findings that Ground Two of the Petition has been procedurally defaulted.  MRR at 15-19.  Because there has been no adjudication on the merits in the Supreme Judicial Court on these claims, the Petitioner is entitled to full pre-AEDPA *de novo* review in this Court on the claims set forth in Ground Two of her Petition.

## Argument

The Magistrate Judge found that the Petitioner has procedurally defaulted on Ground Two of her Petition which alleged that she received ineffective assistance of counsel under the federal constitution because her lawyer did not permit her to make the decision or even consult with her about the decision whether to request the trial judge instruct the jury on lesser included offenses.

There can be no such procedural default in this case. The claims in Ground Two were arguably presented to the Massachusetts Supreme Judicial Court in Footnote 7 of the Petitioner's brief on her direct appeal to that court. See Reply Brief Exhibit A. And, most dispositively for the purpose of federal habeas review, in her Memorandum of Decision denying the Petitioner's Gatekeeper Petition pursuant to G.L. c. 278, § 33E, the Single Justice of the Massachusetts Supreme Judicial Court expressly ruled, "The defendant raised on direct appeal the issue whether her trial counsel should have consulted with her about the decision not to ask for lesser included offense instructions." Memorandum of Decision at 2.[9]

---

[9] The Memorandum of Decision of the Single Justice denying the Petitioner's application for leave to appeal was previously included as Exhibit Q in the Petitioner's opening brief. The Memorandum of Decision of the Single

By its own language, Section 2254(d)(1) expressly limits the provision's application to claims that were "adjudicated on the merits in State court proceedings."  If a claim is not "adjudicated on the merits" within the meaning of 28 U.S.C. § 2254(d)(1), this Court is obliged to employ the traditional, pre-AEDPA standard of full *de novo* review to this particular claim.  See Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001)(strict standard of review established in federal habeas statute for state court adjudications of claims on the merits did not apply to federal habeas review of claim that was never addressed by state court).  As the First Circuit noted in Fortini, "After all, AEDPA imposes a requirement of deference to state court decisions, but we can hardly defer to the state court on an issue that the state court did not address." Id.

Nowhere in the decision of the Supreme Judicial Court on the Petitioner's direct appeal does the state court address the issue of whether trial counsel provided ineffective assistance of counsel because her lawyer did not permit her to make the decision or even consult with her about the decision whether to request the trial judge

Justice was also included in the Respondent's Supplemental Answer which she filed in this case.

instruct the jury on lesser included offenses.  Because the
Single Justice expressly ruled, "The defendant raised on
direct appeal the issue whether her trial counsel should
have consulted with her about the decision not to ask for
lesser included offense instructions" and because there has
been no adjudication on the merits by the Massachusetts
Supreme Judicial Court on this issue within the meaning of
28 U.S.C. § 2254(d)(1), the Magistrate Judge erroneously
found that Ground Two of the Petition was procedurally
defaulted.  Quite to the contrary, for the foregoing
reasons Ground Two of the Petition is not procedurally
defaulted and it is now open for full pre-AEDPA *de novo*
review by this Court.[10]

                    OBJECTION NUMBER THREE

     The Petitioner objects to the Magistrate Judge's
findings that Ground Two and Ground Four of the Petition
(setting forth ineffective assistance of counsel claims)
were procedurally defaulted because the Petitioner could
have presented the claims set forth in these grounds in a
motion for new trial while her appeal was pending or on her
direct appeal.  MRR at 19.  There is no Massachusetts

---

     [10] The claims set forth in Ground Two of the Petition
were fully briefed on the merits in the Petitioner's
opening brief (Argument II and Argument IV).

procedural rule or other obligation under established
Massachusetts caselaw which is consistently enforced for a
criminal defendant to ever file a motion for new trial
prior to the direct appeal of her criminal conviction or to
present a claim of ineffective assistance of counsel on her
direct appeal.

<u>Argument</u>

    The Magistrate Judge's finding that the Petitioner's
ineffective assistance of counsel claims were procedurally
defaulted because she could have filed a motion for new
trial while her direct appeal was pending (and when she was
represented by new counsel) or on her direct appeal is
erroneous.  There is no Massachusetts procedural rule or
other obligation under established Massachusetts caselaw
for a criminal defendant to ever file a motion for new
trial prior to the direct appeal of a conviction or to even
raise a claim of ineffective assistance of counsel on
direct appeal.  <u>See</u> <u>Commonwealth v. Zinser</u>, 446 Mass. 807,
809 & n.2 (2006)("We do not decide whether a defendant
waives <u>even</u> a claim of ineffective assistance resolvable on
the trial record alone by failing to raise it on direct
appeal.")(emphasis added).  Where there is no clearly
applicable state procedural bar, the procedural default
doctrine does not apply.  <u>Ulster County Ct. v. Allen</u>, 442

U.S. 140, 150-151, 154 (1979)("New York has no clear contemporaneous—objection policy that applies in this case.").

Moreover, even if such a procedural rule were somehow shown to exist under Massachusetts law, there is no basis for this Court to conclude that such a procedural rule is consistently enforced by the Massachusetts courts so as to constitute an independent and adequate state ground baring habeas review of the Petitioner's claims by this Court. See James v. Kentucky, 466 U.S. 341, 348-349 (1984)(alleged state procedural requirement not firmly established and regularly followed so as to bar adjudication of federal constitutional claims).

## OBJECTION NUMBER FOUR

The Petitioner objects to the Magistrate Judge's findings that Ground Two and Ground Four of the Petition have been procedurally defaulted.  MRR at 15-22.  Any procedural defaults with respect to the claims set forth in Ground Two and Ground Four of the Petition (setting forth ineffective assistance of counsel claims) are excused under the traditional habeas doctrines of cause and prejudice because the claims of ineffective assistance of counsel could not have been properly mounted at the requisite time

as the Petitioner was still being represented by the same constitutionally ineffective lawyer or because the procedural posture of the case precluded the factual development necessary to litigate such claims.

<u>Argument</u>

The Single Justice of the Massachusetts Supreme Judicial Court expressly ruled, "The defendant raised on direct appeal the issue whether her trial counsel should have consulted with her about the decision not to ask for lesser included offense instructions."  The Single Justice is entitled to substantial, if not absolute deference as to what issues the Petitioner presented to the Massachusetts Supreme Judicial Court on her direct appeal.  Based upon her ruling, the claims in Ground Two of the Petition cannot be deemed procedurally defaulted because they were presented on the Petitioner's direct appeal.  <u>See</u> Objection Number Two.

Nonetheless, should this Court take the position, for whatever reason, that the claims set forth in Ground Two and Ground Four of the Petition are procedurally defaulted because they were not raised in a timely fashion the state courts prior to the Petitioner's second motion for new trial, the Petitioner argues that any such procedural defaults should have been found to have been excused by the

Magistrate Judge under the traditional habeas doctrines of cause and prejudice.  See Coleman v. Thompson, 501 U.S. 722, 750 (1991)(federal habeas review still available in event of procedural default if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.").

First, the Magistrate Judge's findings are erroneous because any putative defaults should be excused because the ineffective assistance of counsel claims could not have been presented by the Petitioner prior to her second motion for new trial.

The Petitioner is relieved of any procedural impediment that she waived her claims of ineffective assistance of counsel by failing to raise them at trial or in her first motion for new trial which was ostensibly filed by trial counsel as part of and in conjunction with the Petitioner's Rule 25(b)(2) motion.[11]  This is so simply

_____

[11] On March 22, 1996, the Petitioner's trial counsel filed a document entitled "Defendant's Motion Pursuant to Massachusetts Rules of Criminal Procedure 25(b)(2) and 30(b)".  Petitioner's Opening Brief Exhibit D.  This paper was filed three days after the jury returned its verdict convicting the Petitioner of first-degree murder.  This motion asked the trial judge to "set aside the verdict and enter a finding of not guilty, or in the alternative, to

because she was represented on her first motion for new trial by her original constitutionally ineffective trial counsel.  The second motion for new trial was the first collateral proceeding available to the Petitioner to properly raise her ineffective assistance of counsel claims since her trial counsel could not have reasonably been expected to assert his own ineffectiveness at the trial itself or in the motion for new trial which he hastily filed three days after the jury returned its verdict.  See Walker v. Gibson, 228 F.3d 1217, 1231-1232 (10th Cir. 2000), cert. denied, 533 U.S. 933 (2001)(although state post-conviction court deemed ineffective assistance of

---

order a new trial, or to enter a finding on any lesser included offense to the offenses charged."  No separate Rule 30(b) claims were presented to the trial judge in this motion.

The requested relief in the motion tracks the wording of Rule 25(b)(2), but the trappings of a substantively and procedurally sufficient Rule 30(b) motion were missing from the motion.  For example, the customary language of Rule 30(b) did not even appear in the motion (e.g., the usual assertion that a motion for new trial should be granted because "justice may not have been done").  The motion was not accompanied by the affidavit required under Rule 30(c)(2) setting forth the facts supporting any potential Rule 30(b) claims.

The memorandum of law which was filed with the motion addressed exclusively the claim for relief under Rule 25(b)(2); it did not discuss or even mention any Rule 30(b) claims belonging to the Petitioner.  Opening Brief Exhibit E.  The only reference to Rule 30(b) within the four corners of the memorandum of law was merely in the title of the document.

counsel claim against trial counsel procedurally barred
because claim not raised on direct appeal, federal court
concludes claim not barred because petitioner had same
counsel on trial and on appeal even though appellate
counsel not lead counsel at trial); Bloomer v. United
States, 162 F.3d 187, 192 (2d Cir. 1998) (procedural
default excused where failure to present ineffective
assistance of counsel claim on direct appeal and in first
§ 2255 motion excused because same lawyer represented
petitioner until second § 2255 motion; second § 2255 motion
was "first real opportunity to raise an ineffective
assistance of counsel claim"); Ciak v. United States, 59
F.3d 296, 303 (2d Cir. 1995)(procedural default rules
inapplicable where alleged ineffective lawyer represented
petitioner at trial and direct appeal and failed to allege
his own ineffectiveness on direct appeal; "[i]t is the rare
attorney who can be expected to contend on appeal that his
representation was so poor that he deprived his client of a
fair trial).

　　Because of the inherent conflict of interest, the
procedural default rules cannot apply in a case such as the
Petitioner's where the ineffective trial counsel fails to
assert his own constitutionally subpar performance in his
own first post-conviction collateral attack on the

conviction.  See United States v. Galloway, 56 F.3d 1239, 1241 (10th Cir. 1995)(en banc)("It appears almost insuperably awkward for trial counsel to assert his or her own ineffectiveness as ground for appeal").  See also Massaro v. United States, 538 U.S. 500, 502-503 (2003) (approvingly referring to lower court's recognition that "ineffective-assistance claims usually should be excused from procedural-default rules because an attorney who handles both trial and appeal is unlikely to raise an ineffective-assistance claim against himself.").[12]

Second, the Magistrate Judge's findings are erroneous because any putative procedural defaults should be excused

_____

[12] Even under Massachusetts law, any ineffective assistance of counsel claims involving the Petitioner's trial counsel could not have *reasonably* been expected to have been raised by him at trial or in the motion for new trial which he filed on behalf of the Petitioner three days after the jury returned its verdict.  See Commonwealth v. Azar, 435 Mass. 675, 686 (2002)(where same attorney represents defendant at trial and on appeal, ineffective assistance claim not waived when raised for the first time in postappeal motion for new trial); Haberek v. Commonwealth, 421 Mass. 1005, 1005 (1995)("Because the same counsel was both the trial attorney and the appellate attorney, the ineffective assistance of counsel claim could not have been raised earlier."); Commonwealth v. Lanoue, 400 Mass. 1007, 1007-08 (1987)(rescript)(claim of ineffective assistance of trial counsel could not have been raised on direct appeal because trial counsel was also appellate counsel); Pires v. Commonwealth, 373 Mass. 829, 836 n.4 (1977)("Counsel's blunders at trial should not be denied full exposure because counsel subsequently blunders an appeal."); Commonwealth v. Peloquin, 52 Mass. App. Ct. 480, 484-85 (2001), reversed on other grounds, 437 Mass. 204 (2002)(same).

as the appellate record on direct appeal was factually
inadequate for the Petitioner's new appellate counsel to
present her ineffective assistance of counsel claims to the
Supreme Judicial Court on her direct appeal.  See Brecheen
v. Reynolds, 41 F.3d 1343, 1363-1364 & n.16 (10th Cir.
1994), cert. denied, 515 U.S. 1135 (1995)(state court
ruling denying appellate review of postconviction claim of
ineffective assistance of counsel because it was not raised
on direct appeal "cannot constitute an adequate state
ground under controlling caselaw because it deprives
[petitioner] of any meaningful review of his ineffective
assistance claim" by preventing additional fact finding).
Indeed, even if the record on direct appeal in the
Petitioner's case had been adequate to present her
ineffective assistance of counsel claims, federal law would
likely still excuse any procedural defaults so long as the
claims were properly exhausted in the state system.  See
Massaro v. United States, 538 U.S. 500, 509 (2003)(failure
to raise ineffective assistance of counsel claim on direct
appeal does not bar claim from being brought in subsequent
§ 2255 proceeding because it does not promote the
objectives of procedural default rules).[13]  See also U.S. v.

---

[13] Although Massachusetts law does not prohibit
ineffective assistance of counsel claims from being raised

Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995)(virtually all federal ineffective assistance of counsel claims brought on direct appeal will be dismissed because factual record required for effective review must be developed).

In this case, the Magistrate erred by not excusing any procedural default with respect to the claims raised in Ground Two of the Petition because there was absolutely nothing in the record on appeal as it existed at the time of the Defendant's direct appeal showing whether trial counsel permitted the Defendant to make the decision

---

on direct appeal, it certainly strongly discourages their presentation unless there is a completely adequate factual record. See Gibney v. Commonwealth, 375 Mass. 146, 148 (1978)(constitutional claims based on facts outside of record "best left for resolution in the first instance by the trial judge on a motion for new trial."); Commonwealth v. Anderson, 58 Mass. App. Ct. 117, 124 n.8 (2003)("narrow exception" for review of ineffective assistance of counsel claims on direct appeal in "special cases where the contested issue concerning the attorney's performance is clear on the extant record"). Cf. Commonwealth v. Vickers, 60 Mass. App. Ct. 24, 34 & n.9 (2003)(trial record provides all facts necessary to decide ineffective assistance claim on direct appeal where trial counsel deliberately declined to perform defense functions depriving defendant of meaningful representation for portion of trial); Commonwealth v. Adamides, 37 Mass. App. Ct. 339, 344 (1994) (claim of ineffective assistance may be resolved on direct appeal "when the factual basis of the claim appears indisputably on the trial record"). The Supreme Judicial Court recently reiterated this principle in Commonwealth v. Zinser, 446 Mass. 807, 809 n.2 (2006)("The occasions when a court can resolve an ineffective assistance claim on direct appeal are exceptional, and our case law strongly disfavors raising ineffective assistance claims on direct appeal.").

whether to request the trial judge instruct the jury on
lesser included offenses.  There was absolutely nothing in
the record on appeal to establish whether trial counsel
even consulted with the Defendant about this decision.[14]  In
short, the appellate record is barren on this factual
issue.

   Similarly, the Magistrate Judge erred because any
procedural default with respect to the claims raised in
Ground Four of the Petition should have been excused since
there is nothing in the record as it existed at the time of
the Defendant's direct appeal to show whether trial counsel
did or did not provide ineffective assistance with respect
to the Commonwealth's "fresh fingerprint" testimony.

---

   [14] The Magistrate Judge erroneously concluded that a
statement made by the Petitioner's appellate counsel in
Petitioner's direct appeal brief (indicating that there was
no discussion between counsel and client regarding the jury
instructions) constituted a statement of fact in the
appellate record.  MRR at 20.  That unsworn statement would
never be part of the record on appeal in the state
proceedings.  Rule 8(a) of the Massachusetts Rules of
Appellate Procedure establishes the composition of the
record on appeal.  Rule 8(a) states, "The original papers
and exhibits on file, the transcript of proceedings, if
any, and a certified copy of the docket entries prepared by
the clerk of the lower court shall constitute the record on
appeal in all cases."  See also Commonwealth v. Dunn, 56
Mass. App. Ct. 89, 95 n.5 (2002)(in raising ineffective
assistance of counsel claim on direct appeal, defendant
"improperly submitted an affidavit to this court for the
first time on appeal").

And third, the Magistrate Judge's findings are erroneous because any putative defaults in this case with respect to the claims set forth in Ground Two and Ground Four of the Petition should be excused based upon the traditional federal habeas corpus doctrines of cause and prejudice.  The classic example of cause for a procedural default is ineffective assistance of counsel within the meaning of Strickland v. Washington, 466 U.S. 668 (1984). See Coleman v. Thompson, 501 U.S. 722, 753-754 (1991) (attorney error that constitutes ineffective assistance of counsel is cause); Murray v. Carrier, 477 U.S. 478, 488 (1986) (ineffective assistance of counsel is cause for procedural default).

The Petitioner has already comprehensively addressed the merits of her federal ineffective assistance of counsel claims in Argument II and Argument IV of her opening brief. The Petitioner respectfully refers this Court to her opening brief for her discussion of the merits of her ineffective assistance of counsel claims, including the resulting prejudice which she suffered that so undermined the adversarial process that the Petitioner's trial cannot be deemed fair or be relied upon as producing a just result.  See Strickler v. Greene, 527 U.S. 263, 289-290 (1999), quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)

("The question is not whether the defendant would more
likely than not have received a different verdict with the
evidence, but whether in its absence he received a fair
trial, understood as a trial resulting in a verdict worthy
of confidence.").

<u>OBJECTION NUMBER FIVE</u>

The Petitioner objects to the Magistrate Judge's
findings that any procedural defaults with respect to the
claims set forth in Ground Three of the Petition are not
excused because the failure to consider the claims will not
result in a fundamental miscarriage of justice.  MRR at 22.
The Petitioner contends that she is actually innocent and
that a fundamental miscarriage of justice occurred in her
case.

<u>Argument</u>

A habeas petitioner who has committed a procedural
default may be excused from the default and obtain federal
review of her constitutional claims by demonstrating "that
failure to consider the claims will result in a fundamental
miscarriage of justice."  <u>Coleman v. Thompson</u>, 501 U.S.
722, 750 (1991).  "[T]he principles of comity and finality
that inform the concepts of cause and prejudice 'must yield
to the imperative of correcting a fundamentally unjust

incarceration.'"  Murray v. Carrier, 477 U.S. 478, 495 (1986), quoting Engle v. Issac, 456 U.S. 107, 135 (1982).

The Magistrate Judge erroneously found that a fundamental miscarriage of justice did not occur in this case.  The Petitioner respectfully disagrees and refers the Court to Argument III in her opening brief for her discussion of merits of the claims set forth in Ground Three of the Petition.  Given the number of exonerations of people wrongfully convicted in this country based on flawed and outright fraudulent forensic evidence, at this point the Commonwealth has to be totally embarrassed by the "fresh fingerprint testimony" which it utilized to obtain a conviction in this case.[15]

The so-called "fresh fingerprint" testimony was the only evidence in the record connecting the Petitioner to the scene of the crime at the time of the crime.  But for the Commonwealth's "fresh fingerprint" testimony, compounded by her trial counsel's constitutionally ineffective performance, she would not have been convicted. The record of the Petitioner's trial is simply devoid of

---

[15] The Petitioner will submit separately objections to the Magistrate Judge's order denying her motion for leave to conduct discovery.  The Petitioner contends the requested discovery would have helped her to develop the full factual basis for Ground III and Ground IV of her Petition.

any evidence of some sort of an act by the Petitioner which contributed to the crime happening.  Under the circumstances, this may be the extraordinary case where constitutional violations have probably resulted in the conviction of someone who is actually innocent.

<u>OBJECTION NUMBER SIX</u>

The Petitioner objects to the Magistrate Judge's findings that the denial of her petition seeking leave to appeal the denial of her motion for new trial to the full Supreme Judicial Court pursuant to G.L. c. 278, § 33E ("Gatekeeper Petition") is by itself an independent and adequate state ground that bars federal habeas review of those claims.  MRR at 19.

<u>Argument</u>

The Petitioner incorporates by reference herein all of the arguments she presented above in Objection Number Two, Objection Number Three, Objection Number Four, and Objection Number Five.  For all those previously stated reasons, the Magistrate Judge's finding that the denial by the Single Justice of the Supreme Judicial Court of the Petitioner's Gatekeeper Petition was an independent and adequate state ground that bars federal habeas review of those claims was erroneous.

<u>Conclusion</u>

For all the foregoing reasons, the Petitioner urges this Court to reject the Magistrate Judge's findings, reasoning, and recommendation denying her relief. The Petitioner instead urges this Court to grant her a writ of habeas corpus.

                         NANCY NETTO
                         By her Attorney


                         /s/ Stephen Paul Maidman_____
                         STEPHEN PAUL MAIDMAN, ESQUIRE
                         1145 Main Street, Suite 417
                         Springfield, Massachusetts  01103-2123
                         (413) 731-7300 (Voice & Fax)
                         maidman@prodigy.net
                         BBO #631882


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document is being filed through the Electronic Case Filing (ECF) system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).  There are no non-registered participants requiring paper copies.


                         /s/ Stephen Paul Maidman_____
                         STEPHEN PAUL MAIDMAN, ESQUIRE
                         1145 Main Street, Suite 417
                         Springfield, Massachusetts  01103-2123
                         (413) 731-7300 (Voice & Fax)
                         maidman@prodigy.net
                         BBO #631882