UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                              )
                              )
NANCY J. NETTO,               )
          Petitioner,         )
                              )
v.                            )    Civil Action No. 05-10695-RGS
                              )
LYNN BISSONNETTE              )
          Respondent.         )
                              )
_____)
```

MEMORANDUM IN SUPPORT OF
<u>APPLICATION FOR CERTIFICATE OF APPEALABILITY</u>

Now comes the Petitioner by and through her undersigned counsel in the above-entitled matter and respectfully submits this memorandum of law in support of her request to this Court for the issuance of a certificate of appealability (COA) pursuant to 28 U.S.C. § 2253.[1]

---

[1] The Petitioner is requesting a certificate of appealability so that she can appeal the following specific issues:

1. Whether the District Court erroneously dismissed the petition for a writ of habeas corpus because:

   a. with respect to Ground I of the petition, the Massachusetts Supreme Judicial Court's decision addressing the sufficiency of the evidence was an objectively unreasonable application of <u>Jackson v. Virginia</u>;

   b. with respect to Ground II of the petition, the ineffective assistance of counsel claims were either not procedurally defaulted or any

This case should not reach its ultimate conclusion
without review by the United States Court of Appeals for
the First Circuit.  Without such review, the Petitioner
faces the prospect of spending the rest of her life in
prison after being convicted of first-degree murder where
the trial record in the state court is devoid of any
evidence of some sort of an act by the Petitioner which
contributed to the crime happening.[2]

---

procedural default should have been excused under
the doctrine of cause and prejudice;

c. with respect to Ground III of the petition, any
procedural default with respect to the fair trial
and due process claims should be excused because
the failure to consider the claims will result in
a fundamental miscarriage of justice;

d. with respect to Ground IV of the petition, the
ineffective assistance of counsel claim was not
procedurally defaulted or any procedural default
should have been excused under the doctrine of
cause and prejudice?

2. Whether the District Court should have permitted the
Petitioner to conduct discovery pursuant to Rule 6 of
the Rules Governing Section 2254 Cases and pursuant to
Rule 33, 34, and 36 of the Federal Rules of Civil
Procedure because (1) it would have helped the
Petitioner to develop the factual basis for Ground III
and Ground IV of the petition and (2) it was
indispensable to the fair, rounded, development of the
material facts of the case?

[2] This Court may properly consider the severity of the
sentence imposed on the Petitioner when deciding whether to
issue a certificate of appealability with respect to the
issues in her case.  This is a capital case under
Massachusetts law.  See G.L. c. 278, § 33E ("[A] capital
case shall mean a case in which the defendant was tried on

<u>Introduction</u>

There is no appeal as of right in habeas corpus cases. <u>See</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335 (2003)(no absolute entitlement to appeal the denial of petition). The applicable statute, 28 U.S.C. § 2253(c), requires the habeas petitioner to first make a "substantial showing of the denial of a constitutional right".  Under the United States Supreme Court's interpretation of 28 U.S.C. § 2253(c), this Court must grant the petitioner a certificate of appealability if reasonable jurists could find the correctness of the dismissal of the petition to be merely debatable.  <u>See</u> <u>Miller-El v. Cockrell</u>, 537 U.S. at 338, <u>quoting</u> <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) ("The Petitioner must demonstrate that reasonable jurists would find the district court's assessment of the

_____

an indictment for murder in the first degree and was convicted of murder in the first degree.")  Massachusetts does not presently impose the death penalty as punishment in capital cases, but the sentence imposed on the Petitioner, life in prison without the possibility of parole, is the severest possible penalty under Massachusetts law.  In death penalty cases, other lower federal courts have recognized the appropriateness of taking into account the severity of the sentence when deciding whether to issue a certificate of appealability. <u>See e.g.</u>, <u>Graves v. Cockrell</u>, 351 F.3d 143, 150 (5th Cir. 2003), <u>cert. denied</u>, 541 U.S. 1057 (2004)("Any doubt regarding whether to grant a COA is resolved in favor of the petitioner, and the severity of the penalty may be considered in making this determination.").  This principle was stated in <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983).

constitutional claims debatable or wrong.")  This is so, as further explained below, even if this Court is absolutely convinced that it came to the correct legal conclusion in dismissing the petition in this case.  While the Petitioner respects the decision of this Court, she submits that an appellate court could reach a different conclusion with respect to the issues presented in her case.

The Applicable Standards for
Issuance of a Certificate of Appealability

In considering whether to issue a certificate of appealability, this Court will examine each of the Petitioner's issues separately and issue a certificate of appealability only for those issues which meet the "substantial showing" requirement established in 28 U.S.C. § 2253(c)(2) as construed by applicable Supreme Court precedent.  See Bui v. Dipaolo, 170 F.3d 232, 237 (1st Cir. 1999)("The better reading of the habeas amendments is one that links section 2253(c)(3)'s insistence on an issue by issue enumeration of what has been certified for appeal with the substantial showing requirement of section 2253(c)(2).").

As discussed below, the Supreme Court has established two different tests for the issuance of a certificate of appealability.  The particular standard that is employed

depends upon whether the habeas claim was denied by the district court based on its merits or whether the habeas claim was denied because of a procedural default. In the Petitioner's case, her sufficiency of the evidence claim (Ground I) was denied by the District Court based on the merits; her other claims (Ground II, Ground III, and Ground IV) were denied because the Court deemed them procedurally defaulted. In deciding whether to issue a certificate of appealability, this Court will evaluate the Petitioner's various claims utilizing one of the two applicable standards.

*Grounds Denied on the Merits*

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2253(c)(2) requires the habeas petitioner make a "substantial showing of the denial of a constitutional right" in order to obtain a certificate of appealability for a specific issue. That standard was explicitly drawn from the Supreme Court's previous ruling in Barefoot v. Estelle, 463 U.S. 880, 893 (2000).[3] In Barefoot v. Estelle, the Court emphasized:

---

[3] Prior to the 1996 amendment of 28 U.S.C. § 2253, the statute itself did not provide the legal standard to be met for obtaining permission to appeal the district court's denial of habeas relief. In Barefoot v. Estelle, 463 U.S. 880 (1983), the Supreme Court established that standard.

> [T]he petitioner need not show that he should
> prevail on the merits.  He has already failed in
> that endeavor.  Rather, he must demonstrate that
> the issues are *debatable* among jurists of reason;
> that a court *could* resolve the issues [in a
> different manner]; or that the questions are
> 'adequate to deserve encouragement to proceed
> further.'

Id. at 893 n.4 (citations omitted and emphasis added).

Recent Supreme Court cases have repeatedly emphasized the inquiry to be made by the district court when determining whether to grant a certificate of appealability for substantively denied claims is only a "threshold inquiry".  See Miller-El v. Cockrell, 537 U.S. at 327 (court should limit its examination to "a threshold inquiry" into underlying merit of claims when deciding whether to issue certificate of appealability); Slack v. McDaniel, 529 U.S. 473, 482 (2000)("The COA statute establishes procedural rules and requires a threshold inquiry into whether the circuit court may entertain an appeal."; Hohn v. United States, 524 U.S. 236, 248 (1998)

---

The Court held that in order to obtain a "certificate of probable cause", the predecessor to the amended statute's "certificate of appealability", the petitioner had to make a "substantial showing of the denial of [a] federal right." Id. at 893.  The AEDPA has been interpreted as codifying that standard at least with respect to constitutional claims.  See Slack v. McDaniel, 529 U.S. 473, 483 (2000) (but for substitution of word "constitutional" for word "federal", Congress codified standard announced in Barefoot v. Estelle).  See also Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)(same).

(considering the issuance of a certificate of appealability "a threshold prerequisite").  And, in Miller-El v. Cockrell, 537 U.S. at 338, the Court reiterated:

> We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus.  Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that the petitioner will not prevail.

When deciding whether to issue a certificate of appealability, the "debatable among jurists of reasons" prong is intended to be permissive rather than restrictive. See Miller-El v. Cockrell, 537 U.S. at 338 (court should not deny application for certificate of appealability merely because it believes petitioner will not demonstrate entitlement to relief).  "This threshold inquiry [of debatability] does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it."  Miller-El v. Cockrell, 537 U.S. at 336.

The Supreme Court's jurisprudence interpreting 28 U.S.C. § 2253(c) shows that the word "debatable" in this context is given its plain meaning.  See Tennard v. Dretke, 542 U.S. 274, 283, 290 (2004)(reversing denial of certificate of appealability which merely "pa[id] lip

service to the principles guiding issuance of COA" where
reasonable jurists would find "debatable or wrong" district
court's disposition of claim).  In short, when deciding
whether to issue a certificate of appealability with
respect to a constitutional claim dismissed substantively
on the merits, "The petitioner must demonstrate that
reasonable jurists would find the district court's
assessment of the constitutional claims debatable or
wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

*Grounds Denied on the Basis of Procedural Default*

In Slack v. McDaniel, 529 U.S. 473 (2000), the Supreme
Court focused on the applicability of Section 2253(c) to
procedurally defaulted issues.  The Court held that a
certificate of appealability should be granted for a
procedurally defaulted issue if the petitioner makes two
threshold showings:

    1.  [T]hat jurists of reason would find it debatable
        whether the petition states a valid claim of the
        denial of a constitutional right; and

    2.  [T]hat jurists of reason would find it debatable
        whether the district court was correct in its
        procedural ruling.

Id. at 484-485.

The substantive first prong of the Slack test
(whether it is debatable the petition states a valid

constitutional claim) is even less demanding than the second prong of the Slack test (whether it is debatable the district court was correct in its procedural ruling).  The petitioner need only show that the procedurally defaulted constitutional claim is "colorable".  See Mateo v. United States, 310 F.3d 39, 40 (1st Cir. 2002)(statute permits certificate of appealability where procedural default prevented district court from reaching constitutional claim if (1) the soundness of the procedural ruling is debatable and (2) the constitutional claim is "colorable").

     With respect to procedurally defaulted claims, the district court simply takes a "quick look" at the face of the petition to determine whether the petitioner has alleged the denial of a constitutional right.  See Mateo v. United States, 310 F.3d at 40 (approvingly citing Jefferson v. Wellborn, 222 F.3d 286, 289 (7th Cir. 2000), where the court adopted view that if petitioner's constitutional claim does not appear utterly without merit after a "quick look", the certificate of appealability can be granted).

     Said differently, provided the petitioner states a constitutional claim that is not entirely frivolous on its face, the standard for the issuance of a certificate of appealability for procedurally defaulted claims is the same as the standard utilized for claims that are denied on the

merits.  The question is whether reasonable jurists would find the district court's disposition of claim on procedural grounds "debatable or wrong".

## Petitioner's Argument for
## Issuance of a Certificate of Appealability

The District Court adopted Magistrate Judge Joyce London Alexander's Report and Recommendation (MRR), dated May 31, 2006 (Document #20), that the petition for a writ of habeas corpus in this case be denied.  Order on Magistrate Judge's Report and Recommendation, dated July 5, 2006 (Document #23).  The District Court then ordered the petition dismissed.  Order of Dismissal, dated July 6, 2006 (Document 24).  For the reasons expressed herein and for all the reasons more fully set forth in the papers[4] previously filed by the Petitioner in this case, the Petitioner urges this Court to issue a certificate of appealability because reasonable jurists could view this Court's assessment of the issues either debatable or wrong.[5]

---

[4] In particular, the Petitioner directs the Court's attention to her opening brief (Document #7), to her reply brief (Document #12), to her memorandum in support of her motion for leave to conduct discovery (Document #17), to her objections to the magistrate judge's report and recommendation (Document 21), and to her objections to the magistrate judge's order denying discovery (Document #22).

[5] The transcript of the Petitioner's trial will be cited by volume and page number as "Tr. Volume/Page".

I.   WITH RESPECT TO GROUND I OF THE PETITION, REASONABLE
     JURISTS COULD FIND THAT THE DISTRICT COURT'S
     ASSESSMENT THAT THE MASSACHUSETTS SUPREME JUDICIAL
     COURT'S DECISION ADDRESSING THE SUFFICIENCY OF THE
     EVIDENCE WAS NOT AN OBJECTIVELY UNREASONABLE
     APPLICATION OF JACKSON v. VIRGINIA WAS DEBATABLE OR
     WRONG.

     The District Court adopted the Magistrate Judge's

findings that the Massachusetts Supreme Judicial Court's

decision with respect to the sufficiency of the evidence

against the Petitioner (regarding her physical presence in

the victim's apartment on the night of the murder as well

as her knowledge that her coventurer was armed with a

dangerous weapon) was not an objectively unreasonable

application of the United States Supreme Court's holding in

Jackson v. Virginia, 443 U.S. 307, 319 (1979)(MRR at 13-

15).  The Petitioner contends that the Supreme Judicial

Court's ruling with respect to the sufficiency of the

evidence against the Petitioner was objectively

unreasonable under the standard articulated in McCambridge

v. Hall, 303 F.3d 24, 36 (1st Cir. 2002)(en banc), and that

reasonable jurists could find the District Court's

assessment of that issue debatable or wrong.

---

Exhibits included with the Petitioner's opening brief
(Document #7) will be cited by identifying letter and,
where appropriate, by page number as "Petitioner's Opening
Brief Exhibit Letter at Page".  The exhibit included with
the Petitioner's reply brief (Document #12) will be cited
by identifying letter as "Reply Brief Exhibit Letter".

*Sufficiency of The Evidence of the Petitioner's*
<u>*Presence at the Scene of the Crime at the Time of the Crime*</u>

With respect to the sufficiency of the evidence of the Petitioner's presence at the scene of the crime at the time of the crime, the Supreme Judicial Court ruled:

> [T]he Commonwealth introduced evidence that her fingerprint was on the bathroom door handle in Levesque's apartment, that it was a "fairly fresh" print, and that Nancy Netto had not been allowed into the apartment for one week prior to the crime. In combination, that evidence viewed in the light most favorable to the Commonwealth, was sufficient to prove that Nancy Netto had been in Levesque's apartment at the time of the crime.

<u>Commonwealth v. Netto</u>, 438 Mass. 686, 701-702 (2003).

Completely aside from whether the Commonwealth's use of its purported "fresh fingerprint" testimony had any kind of legitimate forensic underpinnings, whether it created the evidentiary foundation for a wrongful conviction, and whether it effectively denied the Petitioner her federally protected rights to a fair trial and to the due process of law (<u>see</u> Argument III in Petitioner's Opening Brief), the inference that because the Petitioner's fingerprint was found on the bathroom door handle in the victim's apartment, the Petitioner must have been there at the time of the crime, as otherwise her fingerprint would have been smudged off by someone else using the bathroom door handle, is simply improper. The District Court concluded this

determination by the Supreme Judicial Court was not
objectively unreasonable.  The Petitioner respectfully
suggests this assessment by the District Court would be
very debatable – and perhaps even viewed as wrong – in the
minds of at least some reasonable jurists.

The inference drawn by the state court that the
Petitioner must have been at the scene of the crime at the
precise time of the crime is not only improper, but more
than being merely improper, for AEDPA purposes it is
entirely arbitrary.[6]  It is equally likely, based on this
same evidence, that the Petitioner was not at the scene of
the crime at the precise time of the crime.

Michelle Griffin testified that the last time she saw
the Petitioner in Levesque's (the victim's) apartment was

---

[6] The inferences which the Supreme Judicial Court drew
from its factual findings in the Petitioner's case are not
entitled to any special rule of deference based on 28
U.S.C. § 2254(d)(2) and 28 U.S.C. § 2254(e)(1).  In a
habeas case challenging the state court's determination of
the sufficiency of the evidence under the Jackson standard,
these inferences are more appropriately analyzed under the
unreasonable application test of 28 U.S.C. § 2254(d)(1).
See Ouber v. Guarino, 293 F.3d 19, 27 (1st Cir. 2002),
quoting Sanna v. Dipaolo, 265 F.3d 1, 7 (1st Cir. 2001)
("[T]he special prophylaxis of section 2254(d)(2) applies
only to determination of 'basic, primary, or historical
facts.'").  As the First Circuit noted in the Ouber case,
"Inferences, characterizations of the facts, and mixed
fact/law conclusions are more appropriately analyzed under
the "unreasonable application" prong of section
2254(d)(1)."  Id.

about a week before the murder.  Tr. II/18-19, 24.  The
Petitioner had told her that she was not welcome in
Levesque's apartment after that last visit.  Tr. II/24.
But, before that time, the Petitioner had been seen over
Levesque's apartment on numerous occasions.  Tr. II/19, 79.
Massachusetts State Police Trooper Richard Lauria, the
Commonwealth's fingerprint expert, could not definitively
state how long the Petitioner's fingerprint had been
actually present on the door handle in Levesque's
apartment.  Tr. II/18-19, 79-80, Tr. III/82, 85-88.[7]  And no
other witness placed the Petitioner in Levesque's apartment
(or even in the apartment building itself) at the supposed
time of Levesque's murder.[8]

---

[7] The Commonwealth's fingerprint expert did not exclude
the placement of the print at the time when Michelle
Griffin testified that she had last seen the Petitioner in
Levesque's apartment (about a week before the murder).  Tr.
II/18-19, Tr. III/82, 85-88.

[8] There was also evidence in the record that Levesque
lived alone.  Tr. I/136.  Other than Levesque, there was no
evidence in the record that anyone else was actually in
Levesque's apartment during the week preceding the murder.
And, as a single gentleman living alone in the apartment,
it is equally likely, if not significantly more likely
based upon everyday commonsense, that Levesque never closed
the door to his bathroom when he used the bathroom when
alone in his apartment, thereby leaving the Petitioner's
fingerprint to remain in pristine condition.  Based upon
this evidence, the contrary inference is equally likely –
that despite the discovery of the Petitioner's fingerprint
on the handle to the bathroom door, she was not in the
apartment at the time of the crime.  It is equally likely

The Supreme Judicial Court improperly drew the inculpatory inference against the Petitioner when an opposite and exculpatory inference was equally likely. The state court's determination that there was sufficient evidence of the Petitioner's physical presence at the time of the crime based upon this inference was patently arbitrary. The same evidence equally supports both inculpatory and exculpatory inferences; the state court simply went with the inculpatory inference. Under the federal constitutional standard, no rational jury could properly find beyond a reasonable doubt that the Petitioner was present in the apartment at the time of the murder based upon this circumstantial evidence, evidence which the Petitioner contends is inherently forensically flawed to begin with. And the Supreme Judicial Court's determination that the jury acted rationally was objectively unreasonable under the totality of the evidence, especially when the record of the Petitioner's trial completely lacks any evidence of some sort of an act by the Petitioner which contributed to the crime happening.

---

that the Petitioner's fingerprint was placed on the door handle on some other previous occasion when she was legitimately in Levesque's apartment prior to the murder.

Finally, the Supreme Judicial Court's ruling that there was sufficient evidence to establish the Petitioner's participation in the crime is objectively unreasonable because there was no evidence that the Petitioner acted as an accessory before the crime, aided in the commission of the crime, or even had knowledge that her coventurer intended to commit the crime of armed robbery.

In its decision, the Supreme Judicial Court referred to evidence other than the fingerprint linking the Petitioner to the crime.  Commonwealth v. Netto, 438 Mass. at 702 n.17.  The Magistrate Judge and the District Court, erroneously in the Petitioner's view, relied on that same reasoning.  MRR at 14; Order on Magistrate Judge's Report and Recommendation ("Here, as detailed by the Supreme Judicial Court in its very thorough opinion, there was far more than a "fresh" fingerprint linking petitioner to the crime")(citation and footnote omitted).

But that evidence only shows that the Petitioner utilized the proceeds of the crime or attempted to conceal the crime after the crime occurred.  That evidence does not permit the jury to find beyond a reasonable doubt that she participated in an armed robbery with her coventurer which resulted in the killing of the victim.  Again, the record of the Petitioner's trial is simply devoid of any evidence

of some sort of act by the Petitioner which contributed to
the crime happening.

### Sufficiency of the Evidence
### Regarding Petitioner's Knowledge of a Weapon

With respect to the Petitioner's knowledge of a weapon
or other evidence of her participation in the crime, the
Massachusetts Supreme Judicial Court's reasoning is
similarly strained to the level of "some increment of
incorrectness beyond error" under the McCambridge standard.

As for evidence that the Petitioner had knowledge that
her coventurer[9] was armed with a dangerous weapon, the
murder weapon was a knife that matched a set of steak
knives that was found in a kitchen drawer inside Levesque's
apartment. Tr. IV/101. There was no evidence offered to
suggest that the Petitioner knew that the plan for the
robbery included the use of a weapon or that the Petitioner
was even aware of that planned weapon. The state court
merely inferred that because resistance was to be expected
from Levesque, the perpetrators would have recognized that
a dangerous weapon was necessary to overcome Levesque's
resistance and therefore the Petitioner must have been

---

[9] The Supreme Judicial Court acknowledged that the
Commonwealth presented strong but circumstantial evidence
that the Petitioner's coventurer was the principal
perpetrator. Commonwealth v. Netto, 438 Mass. at 701, 704.

aware of that planned weapon.  The Magistrate Judge found that this inference by the Supreme Judicial Court was not objectively unreasonable.  MRR at 15.  By adopting the report and recommendation, the District Court apparently accepted the Magistrate Judge's finding.

Essentially, what the state court is saying is that the perpetrators planned an armed robbery in the victim's residence, but that they planned to arm themselves with a weapon to be obtained at that residence once they arrived at that residence.  Commonsense would suggest that few, if any, armed robberies are ever planned in such an unusual fashion.  The Petitioner contends this inference is not only unreasonable – and that no rational trier of fact could have ever properly found beyond a reasonable doubt this essential element of the crime of armed robbery under a theory of joint venture based on this thinking – but that the state court's determination relying upon this unusual logic is so flawed that the McCambridge standard is met.  Reasonable jurists would find the District Court's deference to the state court's rationale at least debatable and perhaps even wrong.

In summary, viewing the totality of the evidence in evaluating the determination of the Supreme Judicial Court, that court's assessment that the weight of the evidence was

constitutionally sufficient under <u>Jackson</u> to support Petitioner's conviction is objectively unreasonable under the First Circuit's <u>McCambridge</u> standard.  Upon a threshold inquiry, the District Court's ruling with respect to the substantive merits of Ground I of the petition is debatable or wrong.

II.  WITH RESPECT TO THE CLAIMS PRESENTED IN GROUND II OF
     THE PETITION, REASONABLE JURISTS COULD FIND THAT THE
     DISTRICT COURT'S ASSESSMENT THAT THESE CLAIMS WERE
     PROCEDURALLY DEFAULTED IS DEBATABLE OR WRONG.  BECAUSE
     THERE WAS NO ADJUDICATION ON THE MERITS IN THE STATE
     COURT ON THESE CLAIMS, THE PETITIONER WAS ENTITLED TO
     FULL *DE NOVO* REVIEW BY THE DISTRICT COURT ON THE
     CLAIMS SET FORTH IN GROUND II OF THE PETITION.

The District Court adopted the finding of the Magistrate Judge that the Petitioner procedurally defaulted on the claims presented in Ground II of her Petition which alleged that she received ineffective assistance of counsel under the federal constitution because her lawyer did not permit her to make the decision or even consult with her about the decision whether to request the trial judge instruct the jury on lesser included offenses.

As a preliminary matter, as required by the first prong of the threshold showing mandated by <u>Slack v. McDaniel</u>, Ground II of the Petition alleges ineffective assistance of counsel claims under the federal constitution.  That these constitutional claims are

"colorable" cannot possibly be disputed.  See Argument II
in Petitioner's Opening Brief.

      With respect to the second prong of the threshold
showing required by Slack v. McDaniel, jurists of reason
could find debatable or wrong the District Court's ruling
that these claims were procedurally defaulted.  The claims
in Ground Two were arguably presented to the Massachusetts
Supreme Judicial Court in Footnote 7 of the Petitioner's
brief on her direct appeal to that court.  See Reply Brief
Exhibit A.  And, most dispositively for the purpose of
federal habeas review, in her Memorandum of Decision
denying the Petitioner's Gatekeeper Petition pursuant to
G.L. c. 278, § 33E, the Single Justice of the Massachusetts
Supreme Judicial Court expressly ruled, "The defendant
raised on direct appeal the issue whether her trial counsel
should have consulted with her about the decision not to
ask for lesser included offense instructions." Memorandum
of Decision at 2.[10]

      By its own language, Section 2254(d)(1) expressly
limits the provision's application to claims that were

_____

      [10] The Memorandum of Decision of the Single Justice
denying the Petitioner's application for leave to appeal
was previously included as Exhibit Q in the Petitioner's
Opening Brief.  The Memorandum of Decision of the Single
Justice was also included in the Respondent's Supplemental
Answer which she filed in this case.

"adjudicated on the merits in State court proceedings."  If
a claim is not "adjudicated on the merits" within the
meaning of 28 U.S.C. § 2254(d)(1), the District Court is
obliged to employ the traditional, pre-AEDPA standard of
full *de novo* review to this particular claim.  See Fortini
v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001)(strict standard
of review established in federal habeas statute for state
court adjudications of claims on the merits did not apply
to federal habeas review of claim that was never addressed
by state court).  As the First Circuit noted in Fortini,
"After all, AEDPA imposes a requirement of deference to
state court decisions, but we can hardly defer to the state
court on an issue that the state court did not address."
Id.

    Nowhere in the decision of the Supreme Judicial Court
on the Petitioner's direct appeal does the state court
address the issue of whether trial counsel provided
ineffective assistance of counsel because her lawyer did
not permit her to make the decision or even consult with
her about the decision whether to request the trial judge
instruct the jury on lesser included offenses.  Because the
Single Justice expressly ruled, "The defendant raised on
direct appeal the issue whether her trial counsel should
have consulted with her about the decision not to ask for

lesser included offense instructions" and because there has been no adjudication on the merits by the Massachusetts Supreme Judicial Court on this issue within the meaning of 28 U.S.C. § 2254(d)(1), the Magistrate Judge erroneously found, and the District Court agreed, that Ground Two of the Petition was procedurally defaulted. Quite to the contrary, for the foregoing reasons Ground Two of the Petition is not procedurally defaulted and it was open for full pre-AEDPA *de novo* review by the District Court.[11] Reasonable jurists could easily find this ruling at least debatable or wrong.

III. WITH RESPECT TO THE INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS PRESENTED IN GROUND II AND GROUND IV OF THE PETITION, REASONABLE JURISTS COULD FIND DEBATABLE OR WRONG THE DISTRICT COURT'S ASSESSMENT THAT THESE CLAIMS WERE PROCEDURALLY DEFAULTED BECAUSE THEY COULD HAVE BEEN PRESENTED IN A MOTION FOR NEW TRIAL WHILE THE DIRECT APPEAL WAS PENDING OR ON THE DIRECT APPEAL.

The District Court adopted the Magistrate Judge's finding that the Petitioner's ineffective assistance of counsel claims were procedurally defaulted because she could have filed a motion for new trial while her direct appeal was pending (and when she was represented by new counsel) or on her direct appeal.

---

[11] The substantive claims set forth in Ground Two of the Petition were fully briefed on the merits in the Petitioner's Opening Brief (Argument II and Argument IV).

As a preliminary matter, as required by the first prong of the threshold showing mandated by <u>Slack v. McDaniel</u>, Ground II and Ground IV of the Petition allege ineffective assistance of counsel claims under the federal constitution.  That these constitutional claims are "colorable" cannot possibly be disputed.  <u>See</u> Argument II and Argument IV in Petitioner's Opening Brief.

With respect to the second prong of the threshold showing required by <u>Slack v. McDaniel</u>, jurists of reason would find the District Court's assessment of the procedural default debatable or wrong.  There is no Massachusetts procedural rule or other obligation under established Massachusetts caselaw for a criminal defendant to ever file a motion for new trial prior to the direct appeal of a conviction or to even raise a claim of ineffective assistance of counsel on direct appeal.  <u>See</u> <u>Commonwealth v. Zinser</u>, 446 Mass. 807, 809 & n.2 (2006)("We do not decide whether a defendant waives <u>even</u> a claim of ineffective assistance resolvable on the trial record alone by failing to raise it on direct appeal.")(emphasis added). Where there is no clearly applicable state procedural bar, the procedural default doctrine does not apply.  <u>Ulster County Ct. v. Allen</u>, 442 U.S. 140, 150-151, 154 (1979)("New

York has no clear contemporaneous—objection policy that applies in this case.").

Moreover, even if such a procedural rule were somehow shown to exist under Massachusetts law, there was no basis for the District Court to conclude that such a procedural rule is consistently enforced by the Massachusetts courts so as to constitute an independent and adequate state ground baring habeas review of the Petitioner's claims by this Court.  See James v. Kentucky, 466 U.S. 341, 348-349 (1984)(alleged state procedural requirement not firmly established and regularly followed so as to bar adjudication of federal constitutional claims).


IV.   WITH RESPECT TO THE INEFFECTIVE ASSISTANCE OF COUNSEL
      CLAIMS PRESENTED IN GROUND II AND GROUND IV OF THE
      PETITION, REASONABLE JURISTS COULD FIND DEBATABLE OR
      WRONG THE DISTRICT COURT'S ASSESSMENT THAT ANY
      PROCEDURAL DEFAULTS WERE NOT EXCUSED UNDER THE
      TRADITIONAL HABEAS DOCTRINE OF CAUSE AND PREJUDICE.
      THE CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL COULD
      NOT HAVE BEEN MOUNTED AT THE REQUISITE TIME BECAUSE
      THE PETITIONER WAS STILL BEING REPRESENTED BY THE SAME
      CONSTITUTIONALLY INEFFECTIVE LAWYER AND THE PROCEDURAL
      POSTURE OF THE CASE PRECLUDED THE FACTUAL DEVELOPMENT
      NECESSARY TO LITIGATE SUCH CLAIMS.

The Single Justice of the Massachusetts Supreme Judicial Court expressly ruled, "The defendant raised on direct appeal the issue whether her trial counsel should have consulted with her about the decision not to ask for lesser included offense instructions."  The Single Justice

was entitled to substantial, if not absolute deference by
the federal court as to what issues the Petitioner
presented to the Massachusetts Supreme Judicial Court on
her direct appeal.  Based upon the Single Justice's ruling,
the claims in Ground II of the Petition cannot be deemed
procedurally defaulted because they were presented on the
Petitioner's direct appeal.  See Argument II.

        Nonetheless, the District Court adopted the Magistrate
Judge's report and recommendation and ruled that the claims
presented in Ground II of the Petition, as well as the
claims presented in Ground IV of the Petition, were
procedurally defaulted ostensibly because they were not
raised in a timely fashion the state courts prior to the
Petitioner's second motion for new trial.  The Petitioner
suggests for the purpose of securing a certificate of
appealability that reasonable jurists would find debatable
or wrong the District Court's assessment that any
procedural defaults were not excused under the traditional
habeas doctrines of cause and prejudice.  See Coleman v.
Thompson, 501 U.S. 722, 750 (1991)(federal habeas review
still available in event of procedural default if "the
prisoner can demonstrate cause for the default and actual
prejudice as a result of the alleged violation of federal

law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.").

As a preliminary matter, as required by the first prong of the threshold showing mandated by Slack v. McDaniel, Ground II and Ground IV of the Petition allege ineffective assistance of counsel claims under the federal constitution.  That these constitutional claims are "colorable" cannot possibly be disputed.  See Argument II and Argument IV in Petitioner's Opening Brief.

With respect to the second prong of the threshold showing required by Slack v. McDaniel, jurists of reason could find the District Court's assessment of the claims presented in Ground II and Ground IV debatable or wrong because the ineffective assistance of counsel claims could not have been presented by the Petitioner prior to her second motion for new trial for two distinct sets of reasons.

First, it is at least debatable by reasonable jurists whether the Petitioner was in fact relieved of any procedural impediment that she waived her claims of ineffective assistance of counsel by failing to raise them at trial or in her first motion for new trial which was filed by trial counsel as part of and in conjunction with

the Petitioner's Rule 25(b)(2) motion.[12]  This is so simply
because she was represented on her first motion for new
trial by her original constitutionally ineffective trial
counsel.  The second motion for new trial was the first
collateral proceeding available to the Petitioner to
properly raise her ineffective assistance of counsel claims
since her trial counsel could not have reasonably been
expected to assert his own ineffectiveness at the trial

---

[12] On March 22, 1996, the Petitioner's trial counsel
filed a document entitled "Defendant's Motion Pursuant to
Massachusetts Rules of Criminal Procedure 25(b)(2) and
30(b)".  Petitioner's Opening Brief Exhibit D.  This paper
was filed three days after the jury returned its verdict
convicting the Petitioner of first-degree murder.  This
motion asked the trial judge to "set aside the verdict and
enter a finding of not guilty, or in the alternative, to
order a new trial, or to enter a finding on any lesser
included offense to the offenses charged."  No separate
Rule 30(b) claims were presented to the trial judge in this
motion.

    The requested relief in the motion tracks the wording
of Rule 25(b)(2), but the trappings of a substantively and
procedurally sufficient Rule 30(b) motion were missing from
the motion.  For example, the customary language of Rule
30(b) did not even appear in the motion (e.g., the usual
assertion that a motion for new trial should be granted
because "justice may not have been done").  The motion was
not accompanied by the affidavit required under Rule
30(c)(2) setting forth the facts supporting any potential
Rule 30(b) claims.

    The memorandum of law which was filed with the motion
addressed exclusively the claim for relief under Rule
25(b)(2); it did not discuss or even mention any Rule 30(b)
claims belonging to the Petitioner.  Opening Brief Exhibit
E.  The only reference to Rule 30(b) within the four
corners of the memorandum of law was merely in the title of
the document.

itself or in the motion for new trial which he hastily filed three days after the jury returned its verdict.  See Walker v. Gibson, 228 F.3d 1217, 1231-1232 (10th Cir. 2000), cert. denied, 533 U.S. 933 (2001)(although state post-conviction court deemed ineffective assistance of counsel claim against trial counsel procedurally barred because claim not raised on direct appeal, federal court concludes claim not barred because petitioner had same counsel on trial and on appeal even though appellate counsel not lead counsel at trial); Bloomer v. United States, 162 F.3d 187, 192 (2d Cir. 1998)(procedural default excused where failure to present ineffective assistance of counsel claim on direct appeal and in first § 2255 motion excused because same lawyer represented petitioner until second § 2255 motion; second § 2255 motion was "first real opportunity to raise an ineffective assistance of counsel claim"); Ciak v. United States, 59 F.3d 296, 303 (2d Cir. 1995)(procedural default rules inapplicable where alleged ineffective lawyer represented petitioner at trial and direct appeal and failed to allege his own ineffectiveness on direct appeal; "[i]t is the rare attorney who can be expected to contend on appeal that his representation was so poor that he deprived his client of a fair trial).

Because of the inherent conflict of interest, the procedural default rules cannot apply in a case such as the Petitioner's where the ineffective trial counsel fails to assert his own constitutionally subpar performance in his own first post-conviction collateral attack on the conviction.  See United States v. Galloway, 56 F.3d 1239, 1241 (10th Cir. 1995)(en banc)("It appears almost insuperably awkward for trial counsel to assert his or her own ineffectiveness as ground for appeal").  See also Massaro v. United States, 538 U.S. 500, 502-503 (2003) (approvingly referring to lower court's recognition that "ineffective-assistance claims usually should be excused from procedural-default rules because an attorney who handles both trial and appeal is unlikely to raise an ineffective-assistance claim against himself.").[13]

_____

[13] Even under Massachusetts law, any ineffective assistance of counsel claims involving the Petitioner's trial counsel could not have *reasonably* been expected to have been raised by him at trial or in the motion for new trial which he filed on behalf of the Petitioner three days after the jury returned its verdict.  See Commonwealth v. Azar, 435 Mass. 675, 686 (2002)(where same attorney represents defendant at trial and on appeal, ineffective assistance claim not waived when raised for the first time in postappeal motion for new trial); Haberek v. Commonwealth, 421 Mass. 1005, 1005 (1995)("Because the same counsel was both the trial attorney and the appellate attorney, the ineffective assistance of counsel claim could not have been raised earlier."); Commonwealth v. Lanoue, 400 Mass. 1007, 1007-08 (1987)(rescript)(claim of ineffective assistance of trial counsel could not have been

Second, with respect to the second prong of the threshold showing required by <u>Slack v. McDaniel</u>, jurists of reason could also find the District Court's assessment debatable or wrong because any putative procedural defaults should have been excused as the appellate record on direct appeal was factually inadequate for the Petitioner's new appellate counsel to present her ineffective assistance of counsel claims to the Supreme Judicial Court on her direct appeal. <u>See</u> <u>Brecheen v. Reynolds</u>, 41 F.3d 1343, 1363-1364 & n.16 (10th Cir. 1994), <u>cert. denied</u>, 515 U.S. 1135 (1995) (state court ruling denying appellate review of postconviction claim of ineffective assistance of counsel because it was not raised on direct appeal "cannot constitute an adequate state ground under controlling caselaw because it deprives [petitioner] of any meaningful review of his ineffective assistance claim" by preventing additional fact finding). Indeed, even if the record on direct appeal in the Petitioner's case had been adequate to present her ineffective assistance of counsel claims, federal law would likely still excuse any procedural

---

raised on direct appeal because trial counsel was also appellate counsel); <u>Pires v. Commonwealth</u>, 373 Mass. 829, 836 n.4 (1977)("Counsel's blunders at trial should not be denied full exposure because counsel subsequently blunders an appeal."); <u>Commonwealth v. Peloquin</u>, 52 Mass. App. Ct. 480, 484-85 (2001), <u>reversed on other grounds</u>, 437 Mass. 204 (2002)(same).

defaults so long as the claims were properly exhausted in the state system.  See Massaro v. United States, 538 U.S. 500, 509 (2003)(failure to raise ineffective assistance of counsel claim on direct appeal does not bar claim from being brought in subsequent § 2255 proceeding because it does not promote the objectives of procedural default rules).[14]  See also U.S. v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995)(virtually all federal ineffective assistance of counsel claims brought on direct appeal will

---

[14] Although Massachusetts law does not prohibit ineffective assistance of counsel claims from being raised on direct appeal, it certainly strongly discourages their presentation unless there is a completely adequate factual record.  See Gibney v. Commonwealth, 375 Mass. 146, 148 (1978)(constitutional claims based on facts outside of record "best left for resolution in the first instance by the trial judge on a motion for new trial."); Commonwealth v. Anderson, 58 Mass. App. Ct. 117, 124 n.8 (2003)("narrow exception" for review of ineffective assistance of counsel claims on direct appeal in "special cases where the contested issue concerning the attorney's performance is clear on the extant record").  Cf. Commonwealth v. Vickers, 60 Mass. App. Ct. 24, 34 & n.9 (2003)(trial record provides all facts necessary to decide ineffective assistance claim on direct appeal where trial counsel deliberately declined to perform defense functions depriving defendant of meaningful representation for portion of trial); Commonwealth v. Adamides, 37 Mass. App. Ct. 339, 344 (1994) (claim of ineffective assistance may be resolved on direct appeal "when the factual basis of the claim appears indisputably on the trial record").  The Supreme Judicial Court recently reiterated this principle in Commonwealth v. Zinser, 446 Mass. 807, 809 n.2 (2006)("The occasions when a court can resolve an ineffective assistance claim on direct appeal are exceptional, and our case law strongly disfavors raising ineffective assistance claims on direct appeal.").

be dismissed because factual record required for effective review must be developed).

In this case, it is at least debatable among reasonable jurists whether the District Court should have excused any procedural default with respect to the claims raised in Ground II of the Petition because there was absolutely nothing in the record on appeal as it existed at the time of the Petitioner's direct appeal showing whether trial counsel permitted the Petitioner to make the decision whether to request the trial judge instruct the jury on lesser included offenses. There was absolutely nothing in the record on appeal to establish whether trial counsel even consulted with the Defendant about this decision.[15] In

---

[15] The District Court apparently adopted the Magistrate Judge's conclusion that a statement made by the Petitioner's appellate counsel in Petitioner's direct appeal brief (indicating that there was no discussion between counsel and client regarding the jury instructions) constituted a statement of fact in the appellate record. MRR at 20. Jurists of reason could find debatable whether that unsworn statement could ever be part of the record on appeal in the state proceedings. Rule 8(a) of the Massachusetts Rules of Appellate Procedure establishes the composition of the record on appeal. Rule 8(a) states, "The original papers and exhibits on file, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court shall constitute the record on appeal in all cases." See also Commonwealth v. Dunn, 56 Mass. App. Ct. 89, 95 n.5 (2002) (in raising ineffective assistance of counsel claim on direct appeal, defendant "improperly submitted an affidavit to this court for the first time on appeal").

short, the appellate record in the state court is barren on this factual issue.

Similarly, reasonable jurists could find debatable or wrong whether the District Court should have excused any procedural default with respect to the claims raised in Ground IV of the Petition since there is nothing in the record as it existed at the time of the Defendant's direct appeal to show whether trial counsel did or did not provide ineffective assistance with respect to the Commonwealth's "fresh fingerprint" testimony.

Finally, with respect to the second prong of the threshold showing required by Slack v. McDaniel, jurists of reason could also find the District Court's assessment debatable or wrong because any putative procedural defaults with respect to the claims raised in Ground II and Ground IV of the Petition should have been excused based upon ineffective assistance of counsel, the typical justification for excusing procedural defaults based upon the habeas doctrine of cause and prejudice. The classic example of cause for a procedural default is ineffective assistance of counsel within the meaning of Strickland v. Washington, 466 U.S. 668 (1984). See Coleman v. Thompson, 501 U.S. 722, 753-754 (1991) (attorney error that constitutes ineffective assistance of counsel is cause);

<u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986) (ineffective assistance of counsel is cause for procedural default).

The Petitioner has already comprehensively addressed the substantive merits of her federal ineffective assistance of counsel claims in Argument II and Argument IV of her Opening Brief.  The Petitioner respectfully refers this Court to her Opening Brief for her discussion of the merits of her ineffective assistance of counsel claims, including the resulting prejudice which she suffered that so undermined the adversarial process that the Petitioner's trial cannot be deemed fair or be relied upon as producing a just result.  <u>See</u> <u>Strickler v. Greene</u>, 527 U.S. 263, 289-290 (1999), <u>quoting</u> <u>Kyles v. Whitley</u>, 514 U.S. 419, 434 (1995)("The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.").

V.    WITH RESPECT TO THE CLAIMS PRESENTED IN GROUND III OF THE PETITION RELATING TO THE COMMONWEALTH'S USE OF "FRESH FINGERPRINT" TESTIMONY, REASONABLE JURISTS COULD FIND DEBATABLE OR WRONG THE DISTRICT COURT'S ASSESSMENT THAT ANY PROCEDURAL DEFAULT OF THIS CLAIM WOULD NOT RESULT IN A FUNDAMENTAL MISCARRIAGE OF JUSTICE.

The Petitioner contends that she is actually innocent and that a fundamental miscarriage of justice occurred in

her case.[16]  The Magistrate Judge found that any procedural
defaults with respect to the claims set forth in Ground III
of the Petition were not excused because the failure to
consider the claims would not result in a fundamental
miscarriage of justice.  MRR at 22.  The District Court
adopted this finding.

As a preliminary matter, as required by the first
prong of the threshold showing mandated by Slack v.
McDaniel, Ground III of the Petition alleges claims under
the Sixth Amendment and the Fourteenth Amendment to the
federal constitution.  These constitutional claims are at
least "colorable".  The Petitioner refers this Court to
Argument III in her Opening Brief for her discussion of
merits of the claims set forth in Ground III of the
Petition.

With respect to the second prong of the threshold
showing required by Slack v. McDaniel, reasonable jurists
could find debatable or wrong the District Court's

---

[16] A habeas petitioner who has committed a procedural
default may be excused from the default and obtain federal
review of her constitutional claims by demonstrating "that
failure to consider the claims will result in a fundamental
miscarriage of justice."  Coleman v. Thompson, 501 U.S.
722, 750 (1991).  "[T]he principles of comity and finality
that inform the concepts of cause and prejudice 'must yield
to the imperative of correcting a fundamentally unjust
incarceration.'"  Murray v. Carrier, 477 U.S. 478, 495
(1986), quoting Engle v. Issac, 456 U.S. 107, 135 (1982).

assessment that a fundamental miscarriage of justice did not occur in this case.  The so-called "fresh fingerprint" testimony was the only evidence in the record connecting the Petitioner to the scene of the crime at the time of the crime.  But for the Commonwealth's "fresh fingerprint" testimony, compounded by her trial counsel's constitutionally ineffective performance, she would not have been convicted.  The record of the Petitioner's trial is simply devoid of any evidence of some sort of an act by the Petitioner which contributed to the crime happening.

Under the circumstances of this case, jurists of reason would find at least debatable whether this may actually be the extraordinary case where constitutional violations have resulted in the conviction of someone who is actually innocent.

VI.  WITH RESPECT TO CLAIMS PRESENTED IN GROUND II, GROUND III, AND GROUND IV OF THE PETITION, REASONABLE JURISTS COULD FIND THE DISTRICT COURT'S ASSESSMENT THAT THE CLAIMS WERE PROCEDURALLY DEFAULTED BASED SOLELY UPON THE DENIAL OF THE GATEKEEPER PETITION IS DEBATABLE OR WRONG.

The District Court apparently adopted the finding of the Magistrate Judge that the denial of Petitioner's state court petition seeking leave to appeal the denial of her second motion for new trial to the full Supreme Judicial Court pursuant to G.L. c. 278, § 33E (her "Gatekeeper

Petition") is in and of itself an independent and adequate state ground that bars federal habeas review of those claims (MRR at 19).

The Petitioner incorporates by reference all of the arguments which she presented above in Argument II, Argument III, Argument IV, and Argument V.  For all those previously stated reasons, reasonable jurists could find debatable or wrong the District Court's assessment that the denial by the Single Justice of the Petitioner's Gatekeeper Petition was in and of itself an independent and adequate state ground which bars federal habeas review of those claims.

VII. REASONABLE JURISTS WOULD FIND DEBATABLE OR WRONG THE DISTRICT COURT'S IMPLICIT DENIAL OF THE DISCOVERY REQUESTED BY THE PETITIONER IN THIS CASE.

The District Court dismissed the petition in this case without issuing any formal ruling on the Petitioner's Objections to the Magistrate Judge's Order Denying Petitioner's Motion for Leave to Conduct Discovery (Document 22).  Denying the Petitioner the requested discovery essentially deprived her from developing the full factual basis for the claims presented in Ground III and Ground IV of her Petition.   The Petitioner requests a certificate of appealability to permit her to appeal to the

United States Court of Appeals for the First Circuit the
implicit denial by the District Court of the opportunity to
pursue this discovery.

As a preliminary matter, as required by the first
prong of the threshold showing mandated by Slack v.
McDaniel, Ground III and Ground IV of the Petition allege
ineffective assistance of counsel and other Sixth Amendment
and Fourteenth Amendment claims under the federal
constitution.  These constitutional claims are all
"colorable" and the purpose of the requested discovery was
to vindicate these constitutional claims.  See Argument III
and Argument IV in Petitioner's Opening Brief.

With respect to the second prong of the threshold
showing required by Slack v. McDaniel, reasonable jurists
would find the District Court's denial of this discovery
debatable or wrong because the requested discovery was
indispensable to the fair, rounded, development of the
materials facts of this case.  The Petitioner was not
seeking to embark on a fishing expedition intending to
develop claims for which there is no factual basis.  The
Petitioner sought relevant evidence to show that she is
illegally confined.[17]

---

[17] Ground III and Ground IV of the Petition in this
case allege constitutional violations relating to the

In denying the Petitioner's motion, the Magistrate
Judge wrote, "the fingerprint evidence was not the only
indication that Ms. Netto was involved in the crime for
which she was convicted."  Order at 2.  In response, the
Petitioner incorporates herein the portion of Argument I
above (at pages 16-17) which fully addresses that
contention.

In denying the Petitioner's motion, the Magistrate
Judge also wrote, "Ms. Netto has also had opportunity to
demonstrate that the use of the "fresh fingerprint"
evidence created a substantial likelihood of a miscarriage

---

Commonwealth's use of outrageously flawed fingerprint
evidence.  Each of Petitioner's discovery requests was
narrowly tailored to discover evidence relevant to proving
these constitutional claims or to otherwise demonstrate
justification excusing any alleged procedural default.
The nine proposed requests for admission essentially sought
to establish that the "fresh fingerprint" testimony offered
by the fingerprint expert from the Massachusetts State
Police at trial was outrageously flawed and had absolutely
no legitimate scientific foundation, thereby depriving the
Petitioner of her rights to a fair trial and to the due
process of law guaranteed by the Sixth Amendment and the
Fourteenth Amendment to the federal constitution.  See
Strickland v. Washington, 466 U.S. 668, 684-685 (1984).
The two interrogatories merely sought disclosure of any
purported basis for the Respondent's denial of any of the
propounded requests for admissions.  Finally, the two
requests to produce documents and things sought documents
and other memorializations in the possession, custody, or
control of the Massachusetts State Police which essentially
concede the Petitioner's claim that the fingerprint
expert's "fresh fingerprint" testimony was outrageously
flawed and had absolutely no legitimate scientific
foundation.

of justice."  Order at 2.  To the contrary, the Petitioner has never been afforded the opportunity to have an evidentiary hearing relating to the use of the Commonwealth's "fresh fingerprint" testimony.

## Conclusion

For all the foregoing reasons, the Petitioner respectfully urges this Court to issue her a certificate of appealability so that she can appeal (1) the dismissal of her petition for a writ of habeas corpus and (2) the implicit denial of her motion for leave to conduct discovery to the United States Court of Appeals for the First Circuit.

NANCY J. NETTO

By her Attorney

/s/ Stephen Paul Maidman_____
STEPHEN PAUL MAIDMAN, ESQUIRE
1145 Main Street, Suite 417
Springfield, Massachusetts  01103-2123
(413) 731-7300 (Voice & Fax)
maidman@prodigy.net
BBO #631882

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document is being filed through the Electronic Case Filing (ECF) system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).  There are no non-registered participants requiring paper copies.

/s/ Stephen Paul Maidman_____
STEPHEN PAUL MAIDMAN, ESQUIRE
1145 Main Street, Suite 417
Springfield, Massachusetts  01103-2123
(413) 731-7300 (Voice & Fax)
maidman@prodigy.net
BBO #631882